UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

KEVIN RINGELBERG,

                           Plaintiff,                         ____ CV _____

   -against-                                     **COMPLAINT**

THE CITY OF NEW YORK, SHERIFFS EDWARD    **JURY TRIAL DEMANDED**
OLIVE, TAX REG. #690061, KEN CLARK,
MICHAEL "LAST NAME UNKNOWN,"
TAX REG. #592168, and JOHN DOES ## 1-10,

                           Defendants.

----------------------------------------------------------------X

       Plaintiff Kevin Ringelberg ("Plaintiff" or "Ringelberg"), as and for his complaint against defendants City of New York, Sheriffs Edward Olive, Ken Clark and a third sheriff named Michael whose last name is unknown at this time, and John Does ## 1-10, alleges as follows upon information and belief:

       1.     This action seeks to vindicate plaintiff's constitutional and common law rights which were violated on or about June 19, 2019, when defendants Olive and others pulled plaintiff over on a pretext and unlawfully detained him for five hours afterward. During plaintiff's unlawful detention, defendants sought plaintiff's cooperation with a purported investigation into the unlawful sale of cigarettes by Andre Dennis, a Shinnecock Native American Tribal Member who resides at the Shinnecock Reservation. Although plaintiff subsequently met with sheriffs, as they had requested, no one ever asked him to provide further information or to participate in any "investigation" of Mr. Dennis. Instead, plaintiff Ringelberg was falsely charged with unlawful transportation of cigarettes and a moving violation. All

charges have since been dismissed. However, plaintiff's business was severely damaged by defendants' unlawful conduct. He now seeks redress for the wrongs committed against him.

## PARTIES

2. Plaintiff Kevin Ringelberg resides in the town of Brightwaters, New York, which is situated within the County of Suffolk, State of New York.

3. Defendant City of New York (hereafter the "City") is a municipal corporation organized and existing under the laws of the State of New York.

4. Defendant Olive is employed as a Sheriff by the City of New York, and his regular place of business is located in the Bronx, New York.

5. Defendant Clark is employed as a Sheriff by the City of New York, and his regular place of business is located in Long Island City, New York.

6. Defendant "Michael," whose last name is unknown at this time, is employed as a Sheriff by the City of New York, and his regular place of business is located in the Bronx, New York.

7. Defendants John Does ## 1-10 are employed as sheriffs by the City of New York, or by other law enforcement agencies of the City of New York, and participated directly in the violations of plaintiff's constitutional and common law rights as more fully set forth below.

## JURISDICTION AND VENUE

8. Jurisdiction in this Court is founded upon (i) 28 U.S.C. §§ 1331 and 1343, in that this lawsuit alleges claims based upon the Civil Rights Act of 1871, as amended, codified at 42 U.S.C. § 1983, and (ii) 28 U.S.C. § 1367, in that the Court has supplemental jurisdiction over the state law claims asserted herein.

9. Venue is proper in this district because a substantial portion of the events giving rise to this complaint occurred within this district.

## CONDITIONS PRECEDENT TO THIS ACTION

10. On or about August 6, 2019, plaintiff filed a Notice of Claim with the Comptroller of the City of New York, which was assigned Claim #2019-00057971, and/or Claim #2019-PI-021090.

11. On or about October 29, 2019, plaintiff appeared at the offices of Krez & Flores, 225 Broadway, New York, New York, for an examination pursuant to General Municipal Law Section 50-h.

12. More than thirty (30) days have elapsed since plaintiff served his notice of claim and the claim has not been settled or adjusted.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13. Plaintiff Kevin Ringelberg is the principal of a common carrier known as Hammberg, Inc. (hereafter "Hammberg"), a New York corporation.

14. Hammberg is licensed by the U.S. Department of Transportation to transport property by motor vehicle in interstate commerce.

15. As part of Hammberg's business, it was engaged in transporting cigarettes to the Shinnecock Nation for Mr. Dennis, who, upon information and belief, sold the cigarettes within Shinnecock Nation territory after he received them.

16. On or about June 18, 2019, Ringelberg embarked on a trip to North Carolina to pick up 2,084 cartons of cigarettes for Mr. Dennis.

17. Ringelberg had sufficient funds in his possession to pay for the cigarettes, and to cover any additional charges, fees or taxes.

3

18. On the way to North Carolina, Ringelberg's van broke down and he rented another vehicle from Enterprise, in order to complete the trip.

19. On or about June 19, 2019, Ringelberg arrived in North Carolina, picked up the cigarettes and drove back to New York.

20. When he arrived in New York State, he crossed over the George Washington Bridge and took the Cross-Bronx Expressway towards the Throgs Neck Bridge.

21. While driving on the Expressway, a car cut him off and he swerved to his right in order to avoid a collision.

22. At that point, he saw what appeared to be a police car with its turret lights on, following behind him.

23. In response to the police lights on the car behind him, Ringelberg pulled over on the right hand side of the Expressway, on the shoulder.

24. He heard an officer's voice over the loudspeaker instruct him to exit the highway onto Randall Avenue.

25. He complied with the directions and pulled over on Randall Avenue.

26. Defendant John Doe #1 approached plaintiff's vehicle and told him he was pulled over because he made an illegal lane change and that his blinker was not working.

27. Plaintiff turned his blinker on to show Defendant Doe #1 that it was working, and also stated that he had to move out of another car's way or else that car would have hit him.

28. Defendant Doe #1 replied that when the other driver cut plaintiff off, that's when he made an "illegal lane change."

29. Defendant Doe #1 asked for plaintiff's license and registration, and he complied.

30. After a few minutes, Defendant Doe #1 returned to plaintiff's vehicle with his partner, Defendant John Doe #2, and both officers instructed him to get out of his vehicle.

31. Defendants Doe ##1 and 2 asked for permission to search plaintiff's vehicle and plaintiff signed a consent form allowing them to do so.

32. Both officers then opened the back of the van and started going through the 2,084 cartons of cigarettes.

33. By this time, other officers arrived at the scene.

34. Defendants John Does ##3 and 4 also searched plaintiff's vehicle.

35. Officers searched the van for approximately 20-30 minutes.

36. After the vehicle search, Defendants Does ##3-4, and/or Defendants Olive, Michael LNU, or John Does ##5-10, told plaintiff he was under arrest for illegally transporting cigarettes.

37. Plaintiff informed the officers that he was a licensed common carrier and that he was authorized to transport cigarettes.

38. He showed the officers the paperwork associated with the cigarettes, including the Bill of Lading, as well as documentation showing that he was a licensed common carrier.

39. Defendants disregarded the information plaintiff provided and took him into custody.

40. Plaintiff was handcuffed and taken to a building that, upon information and belief, is the Sheriff's Office in the Bronx, New York, located at 3030 Third Avenue, in the Bronx.

41. Before he was taken away in handcuffs, plaintiff was read his Miranda rights.

42. Plaintiff was detained for approximately four to five hours, the majority of the time inside a holding cell.

43. He was never photographed or fingerprinted.

44. At the Sheriff's Office, plaintiff was interviewed in a conference room by one or more of Defendants Olive, Michael LNU, or Does ##1-10.

45. The officers told plaintiff in words or substance that he was "in a lot of trouble" for illegally transporting cigarettes, and stated that if he was willing to help them investigate Mr. Dennis, and to determine what he (Dennis) was doing with the cigarettes, they would ensure that he would not be held criminally responsible for his purportedly "illegal" conduct.

46. Plaintiff replied that he would assist the officers in whatever way he could.

47. After those conversations, plaintiff was placed in a holding cell.

48. After about four or five hours, he was taken in handcuffs to the 41st Precinct in the Bronx and dropped off there.

49. His wife picked him up about half an hour later.

50. Plaintiff was issued traffic ticket #AAW7050260, signed by an officer named "Michael" whose last name is illegible on the face of the ticket, Tax Reg. #592168, for an allegedly unsafe lane change.

51. The traffic ticket was dismissed in August, 2020.

52. Plaintiff was also issued Criminal Court Appearance Ticket #4443725739, signed by Defendant Olive, Tax Reg. #690061, allegedly for violating Section 11-4012(B) of the City Administrative Code.

53. Plaintiff's criminal case was docketed under 2019-SX-018931.

54. Plaintiff's criminal case was dismissed on August 28, 2019, at the first appearance, when plaintiff's counsel provided documentation establishing that plaintiff's

business, Hammberg, was a licensed common carrier within the meaning of Section 11-4012(E) of the Administrative Code, and therefore that he was not criminally liable.

55. Plaintiff's counsel provided the court with the same documentation plaintiff himself had provided to the defendant officers on the date he was arrested and charged.

56. Sometime during the week after the plaintiff was arrested, he met with defendant Clark in Long Island City.

57. At that meeting, plaintiff explained his business with Mr. Dennis and agreed to assist in any investigation to the extent he could.

58. He never heard back from defendant Clark or any other law enforcement personnel after that meeting.

59. In addition, plaintiff's Criminal Court Appearance Ticket was not docketed until after he filed his notice of claim in connection with this lawsuit.

60. The City of New York and/or the individually named defendants herein confiscated the cigarettes in plaintiff's van and have not returned them to their owner, Mr. Dennis, who paid approximately $117,000.00 for them.

61. Because of defendants' unlawful arrest of plaintiff, Mr. Dennis has refused to hire Hammberg or plaintiff to transport cigarettes since June 18, 2019.

62. In addition, plaintiff has lost the opportunity to transport cigarettes for another member of the Shinnecock Nation, who has informed plaintiff that he will not do business with him until Mr. Dennis obtains his cigarettes.

63. Plaintiff has therefore suffered a substantial loss in income due to defendants' unlawful conduct.

64. Plaintiff has also suffered damages in the form of attorney's fees for his criminal case, additional costs for the van he rented from Enterprise, and emotional distress related to his unlawful arrest and prosecution on false charges.

### FIRST CAUSE OF ACTION (False Arrest – 42 U.S.C. § 1983)

65. Plaintiff repeats and realleges paragraphs 1-64, above, as though fully set forth herein.

66. Defendants Olive, "Michael" LNU, and Does ##1-10 confined plaintiff for at least four to five hours on or about June 19-20, 2019.

67. Plaintiff was conscious of the confinement.

68. Plaintiff did not consent to the confinement.

69. Defendants' confinement of plaintiff was not privileged.

70. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

71. Plaintiff demands punitive damages against Olive, "Michael" LNU, and John Does ##1-10 personally, given their wanton, malicious, reckless conduct.

### SECOND CAUSE OF ACTION (False Arrest – State Law)

72. Plaintiff repeats and realleges paragraphs 1-71, above, as though fully set forth herein.

73. Defendants City of New York, Olive, "Michael" LNU, and Does ##1-10 confined plaintiff for at least four to five hours on or about June 19-20, 2019.

74. Plaintiff was conscious of the confinement.

75. Plaintiff did not consent to the confinement.

76. Defendants' confinement of plaintiff was not privileged.

77. All individual defendants named herein were acting in their capacity as City employees, and within the scope of their employment, when they violated plaintiff's rights.

78. The City is liable for the acts of all individual defendants pursuant to the doctrine of respondeat superior.

79. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

80. Plaintiff demands punitive damages against Olive, "Michael" LNU, and John Does ##1-10 personally, given their wanton, malicious, reckless conduct.

### THIRD CAUSE OF ACTION (Assault and Battery – State Law)

81. Plaintiff repeats and realleges paragraphs 1-80, above, as though fully set forth herein.

82. Defendants City of New York, Olive, "Michael" LNU, and Does ##1-10, used force, including handcuffs, to arrest plaintiff and to confine him without his consent for at least four to five hours on or about June 19-20, 2019.

83. Defendants did not have probable cause to arrest plaintiff.

84. Defendants' use of force against plaintiff constitutes an assault and battery under State law.

85. All individual defendants named herein were acting in their capacity as City employees, and within the scope of their employment, when they violated plaintiff's rights.

86. The City is liable for the acts of all individual defendants pursuant to the doctrine of respondeat superior.

87. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

88. Plaintiff demands punitive damages against Olive, "Michael" LNU, and John Does ##1-10 personally, given their wanton, malicious, reckless conduct.

### FOURTH CAUSE OF ACTION (Malicious Prosecution – 42 U.S.C. § 1983)

89. Plaintiff repeats and realleges paragraphs 1-88, above, as though fully set forth herein.

90. In or about June, 2019, defendants Olive, Clark, "Michael" LNU, and John Does ## 1-10 commenced legal proceedings against Ringelberg.

91. The proceedings were commenced without probable cause.

92. Defendant Clark knew that the proceedings were commenced without probable cause and encouraged defendants Olive, "Michael" LNU, and Does ##1-10, to commence the proceedings anyway, and otherwise encouraged or importuned the authorities to act, in order to coerce Ringelberg to cooperate in a purported "investigation" of Shinnecock Tribal Member Dennis.

93. The proceedings were commenced with malice.

94. The proceedings were terminated in Ringelberg's favor in all respects.

95. Ringelberg suffered a deprivation of liberty proximately caused by the false charges, viz., among other things he was detained for five hours and was forced to appear in court to defend the false charges brought by Olive, Clark, "Michael" LNU, and John Does ## 1-10, and he had to adhere to other conditions including not leaving the State of New York while the charges were pending.

96. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

97. Plaintiff demands punitive damages against Olive, Clark, "Michael" LNU, and John Does ##1-10 personally, given their wanton, malicious, reckless conduct.

### FIFTH CAUSE OF ACTION (Denial of Right to Fair Trial – 42 U.S.C. § 1983)

98. Plaintiff repeats and realleges paragraphs 1-97, above, as though fully set forth herein.

99. Defendants Olive, Clark, "Michael" LNU, and John Does ##1-10 fabricated evidence against Ringelberg, including but not limited to evidence that (i) Ringelberg made an unsafe lane change on the Cross Bronx Expressway, and (ii) Ringelberg illegally transported cigarettes within the City of New York.

100. The false evidence was likely to, and was intended to, influence a jury's decision.

101. Defendants forwarded the false evidence to prosecutors and/or others.

102. Ringelberg suffered a deprivation of liberty as a result of defendants' fabrication of evidence.

103. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

104. Plaintiff demands punitive damages against Olive, Clark, "Michael" LNU, and John Does ##1-10 personally, given their wanton, malicious, reckless conduct.

### SIXTH CAUSE OF ACTION (Malicious Prosecution – State Law)

105. Plaintiff repeats and realleges paragraphs 1-104, above, as though fully set forth herein.

106. In or about June, 2019, defendants City of New York, Olive, Clark, "Michael" LNU, and John Does ## 1-10 commenced legal proceedings against Ringelberg.

107. The proceedings were commenced without probable cause.

108. Defendant Clark knew that the proceedings were commenced without probable cause and encouraged defendants Olive, "Michael" LNU, and Does ##1-10, to commence the proceedings anyway, and otherwise encouraged or importuned the authorities to act, in order to coerce Ringelberg to cooperate in a purported "investigation" of Shinnecock Tribal Member Dennis.

109. The proceedings were commenced with malice.

110. The proceedings were terminated in Ringelberg's favor in all respects.

111. All individual defendants named herein were acting in their capacity as City employees, and within the scope of their employment, when they violated plaintiff's rights.

112. The City is liable for the acts of all individual defendants pursuant to the doctrine of respondeat superior.

113. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

114. Plaintiff demands punitive damages against Olive, Clark, "Michael" LNU, and John Does ##1-10 personally, given their wanton, malicious, reckless conduct.

**SEVENTH CAUSE OF ACTION (Malicious Abuse of Process – State and Federal Law)**

115. Plaintiff repeats and realleges paragraphs 1-114, above, as though fully set forth herein.

116. Defendants Olive, Clark, "Michael" LNU, and Does ##1-10 employed regularly issued legal process against Ringelberg by arresting him, and charging him with traffic violations and illegally transporting cigarettes despite the absence of probable cause to do so.

117. Defendants intended to harm Ringelberg without any lawful excuse.

118. Defendants' purpose in abusing process was to coerce Ringelberg into cooperating with their purported "investigation" of Shinnecock Tribal Member Dennis.

119. Defendant Clark was fully aware of his co-defendants' ulterior purpose in employing regularly issued legal process against Ringelberg.

120. All individual defendants named herein were acting in their capacity as City employees, and within the scope of their employment, when they violated plaintiff's rights.

121. The City is liable for the acts of all individual defendants pursuant to the doctrine of respondeat superior.

122. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

123. Plaintiff demands punitive damages against Olive, Clark, "Michael" LNU, and John Does ##1-10 personally, given their wanton, malicious, reckless conduct.

124. Ringelberg has sustained substantial damages because of defendants' unlawful conduct.

125. Plaintiff demands punitive damages against defendants personally, given their wanton, malicious, reckless conduct.

WHEREFORE, plaintiff Kevin Ringelberg respectfully prays for judgment against the defendants as follows:

(a) Compensatory damages in an amount not less than $150,000;

(b) Punitive damages against the individual defendants personally, in an amount not less than $50,000 each;

(c) Attorney's fees in an amount to be determined, pursuant to 42 U.S.C. § 1988; and

(d)  For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 4, 2020

                    HALE & MONICO LLC
                    The Woolworth Building
                    233 Broadway, Suite 820
                    New York, New York 10279

By: _____
     Arthur G. Larkin, Esq.
     (646) 858-1180
     alarkin@halemonico.com